**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ABDULLAH JOHNSON,

        Petitioner,               Case Number: 2:09-CV-14665
                                                  HON. MARIANNE O. BATTANI

v.

CINDI CURTIN,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Abdullah Johnson, ("Petitioner"), confined at the Carson City Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his Wayne Circuit Court convictions for one count of assault with intent to commit murder, MICH. COMP. LAWS 750.83; one count of armed robbery, MICH. COMP. LAWS 750.529; one count of felon in possession of a firearm, MICH. COMP. LAWS 750.224f; and one count of felony-firearm, MICH. COMP. LAWS 750.227b. Petitioner was sentenced to concurrent terms of 15-to-30 years for the assault with intent to commit murder conviction, 10-to-20 years for the armed robbery conviction, 5-to-10 years for the felon in possession of a firearm conviction, and a consecutive term of two years for the felony-firearm conviction. Petitioner claims that (1) insufficient evidence was presented at trial, (2) his trial counsel was ineffective, and (3) the prosecutor committed misconduct. Respondent asserts that the state courts reasonably decided the claims against Petitioner on the merits. For the reasons that follow, the Court finds that habeas relief is not warranted and denies the petition.

## I. Facts

The material facts leading to Petitioner's conviction are recited verbatim from the Michigan Court of Appeals opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1):

> Defendant was tried jointly with codefendant Raashid Johnson, who was tried by the trial court and acquitted of felonious assault, MICH. COMP. LAWS 750.82, felon in possession of a firearm, MICH. COMP. LAWS 750.224f, and felony-firearm MICH. COMP. LAWS 750.227b. The prosecution's theory at trial was that the victim, Michael Golston, became involved in an argument with defendant's sister over a gas bill, and was shot and robbed by defendant and defendant's brother Raashid. The defense theory was that Golston never saw who shot him and that, while defendant admittedly was present at the time of the incident, a third man, David Johnson, was the person who shot the victim. David Johnson testified at trial and claimed that he shot Golston because he thought Golston was attempting to get a weapon.

People v. Johnson, 2009 Mich. App. LEXIS 78, *1 (Mich. Ct. App. Jan. 15, 2009).

## II. Procedural History

Following his conviction and sentence, Petitioner filed an appeal of right in the Michigan Court of Appeals. He also filed a motion to remand for an evidentiary hearing on his ineffective assistance of counsel claim. Petitioner's appellate brief raised two claims:

I. Defendant-Appellant is entitled to a new trial where the trial court abused its discretion in reinstating the charge of assault with intent to commit murder.

II. Defendant-Appellant is entitled to a new trial where the trial court erred in denying the motion for a new trial.

Petitioner filed a pro se supplemental brief that raised an additional five claims:

III. The Defendant is entitled to dismissal of the charges against him or a new trial where the Trial Court abused its discretion by denying Defendant's motion for a new trial.

IV. Defendant's conviction should be reversed and the charges against

him dismissed because: (A) there was insufficient evidence to bind over the Defendant; and (B) the Circuit Court lacked jurisdiction to try Defendant where the Prosecution failed to establish the corpus delicti of the offenses charged at the preliminary examination.

V. Defendant's conviction for assault with intent to commit murder must be reversed where the Circuit Court abused its discretion by permitting the Prosecution to amend the information and substituted its finding for those of the District Court magistrate.

VI. Trial Counsel's ineffective performance deprived Defendant of his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process of law and a fair trial where counsel: (A) failed to file a motion to dismiss in the Circuit Court and failed to oppose the Prosecution's motion to amend the information where the same was predicated on a misrepresentation of the facts; (B) failed to investigate the case and interview a known exculpatory witness prior to trial; (C) misrepresented defense theory of the case to the court in a fashion that did irreparable harm to the Defendant's trial strategy; and (D) put evidence of Defendant's prior incarceration before the jury, prejudicing the jury and undermining Defendant's constitutional right to take the stand in his own defense.

VII. Defendant is entitled to a new trial where (A) the Trial Court erred in allowing the admission of prejudicial "other acts" evidence pursuant to Michigan Rule of Evidence 404(b) and allowing the Prosecution to characterize the Defendant as "evil," thereby denying Defendant his constitutional rights to a fair trial and due process of law; and (B) prosecutorial misconduct in eliciting prejudicial testimony and denigrating Defendant deprived Defendant of a fair trial.

The Michigan Court of Appeals granted Petitioner's motion for remand, and it limited the evidentiary hearing to two issues:

I. Defense Counsel's failure to interview defense witness David Johnson prior to trial.

II. Defense Counsel's failure to call Eddy Stanley as a defense witness.

At the hearing, Petitioner presented three witnesses: himself, trial counsel, and Eddy Stanley. The trial court found that counsel was not ineffective in the way he used David Johnson in Petitioner's defense or for failing to call Eddy Stanley.

3

The Michigan Court of Appeals subsequently affirmed Petitioner's convictions in an unpublished opinion. Id. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but it was denied in a standard order. People v. Johnson, 485 Mich. 889 (2009)(table).

Petitioner then filed the pending habeas petition, raising three claims:

I. Must Petitioner's conviction and sentence be vacated where he was denied due process when the trial judge found the record lacking sufficient evidence beyond a reasonable doubt and upheld Petitioner's conviction.

II. Was Petitioner denied his Sixth Amendment right to effective assistance of counsel when counsel (A) failed to conduct an adequate pre-trial investigation in the form of failing to locate and interview David Johnson prior to trial, (B) misrepresented the defense theory in a fashion that did irreparable harm to Petitioner's trial strategy, and (C) opened the door to 404(b) evidence.

III. Was Petitioner denied his due process right to a fair trial when the prosecutor called Petitioner "evil" during closing rebuttal.

### III. Standard

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

4

proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 789 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling

5

on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007), citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### V. Discussion

#### A. Insufficient Evidence Claim

Petitioner's first claim asserts that insufficient evidence was presented to sustain his

conviction for assault with intent to commit murder. Specifically, Petitioner argues that Golston's testimony is incredible as a matter of law, and that co-defendant Raashid Johnson's acquittal by the trial judge on the same charges undermines the jury's verdict.

The Michigan Court of Appeals rejected this claim on the merits. Review of the state court's determination is therefore doubly-deferential. First, as in all sufficiency-of-the-evidence challenges, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009), citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This must be done without re-weighing the evidence, re-evaluating the credibility of witnesses, or substituting the Court's judgment for that of the fact finder. Id; see also Schlup v. Delo, 513 U.S. 298, 330 (1995) ("under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review"). Even if the reviewing Court might not have voted to convict, it "must uphold the . . . verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." Id.

Second, even if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Brown, 567 F.3d at 205. A habeas court may not grant the writ unless the state court's decision was "objectively unreasonable," or, in other words, no "fair minded jurists" could resolve the case in the way the state court did. See Richter, 131 S. Ct. at 786.

7

The Court finds that Petitioner's claim does not survive the first level of deferential review. Viewing the evidence most favorably to the prosecution, a rational fact-finder could find beyond a reasonable doubt that Petitioner was guilty of assault with intent to commit murder. Under Michigan law, the elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. People v. Barclay, 208 Mich.App. 670, 674 (1995). Further, under Michigan law, the facts in evidence may be used to prove the intent to kill. Here, Golston's testimony alone is sufficient to convict Petitioner of assault with intent to commit murder.

Golston testified that he saw Petitioner shoot him despite being turned away from Petitioner when he was shot. Additionally, Golston testified that Petitioner was the only person in the room with him when he was shot. This testimony was sufficient to show that Petitioner assaulted Golston. The fact that Petitioner shot Golston with a handgun, and the extent of the injuries Golston received, could lead a rational fact-finder to infer beyond a reasonable doubt that Petitioner intended to kill Golston.

Petitioner contends that Golston's testimony is incredible as a matter of law. Petitioner points to the following evidence in support of his argument: (1) Golston testified that Raashid Johnson pointed a handgun at him; (2) Golston testified that he did not know Petitioner; (3) Golston's description of Petitioner matched that of David Johnson; (4) David Johnson testified that he committed the shooting; (5) three police officers testified that Golston told them that Petitioner, Raashid Johnson, and a third unidentified man were present when he was shot, and (6) Vervena Johnson, Petitioner's sister, corroborated David Johnson's testimony.

When reviewing a sufficiency of the evidence claim, a court may overturn a jury's credibility determination only where testimony is incredible as a mater of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." United States v. Radziszewski, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); accord United States v. Flores, 572 F.3d 1254, 1263 (11th Cir. 2009).

It was not "impossible under the laws of nature" for Golston to witness Petitioner shooting him. Golston testified that he owned a rental house, and Petitioner's sister resided in one of the units. While Golston was painting another unit in the building, he saw Petitioner's sister and confronted her about a gas bill. Petitioner's sister called her grandmother, who sent Petitioner and his brother, Raashid, to the building to find out what the trouble was about. Golston knew Raashid, but he had never met Petitioner. When Petitioner entered the unit Golston was painting, he introduced himself, and the two men shook hands. Petitioner asked what the problem was, and the two men talked for a short time. Seconds after the men parted, Golston saw Petitioner return with a handgun. Petitioner told Golston to get down on the floor, and then shot him in the lower back. Two other men, Raashid and a man Golston did not know, then came into the room and pointed guns at Golston's head and demanded his money. Golston asked Raashid how he could let this happen, and Raashid replied that he wasn't there when he was shot.

Golston's testimony is not incredible as a matter of law. The shooter was in the room with him when he was shot, and Golston testified that he was certain it was Petitioner who shot him. While Golston did not know Petitioner from any previous encounters, he had

9

just met him and had a short conversation with him seconds prior to the shooting. Petitioner merely asks the Court to re-evaluate the credibility of Golston's testimony. While David Johnson testified that he is the one who shot Golston, his testimony was impeached by the fact that he was facing first-degree murder charges in another case where he confessed his guilt. As discussed above, re-evaluating the credibility of witnesses is generally outside the scope of habeas review. Therefore, there is no merit to this argument.

Finally, Petitioner argues that co-defendant Raashid Johnson's acquittal is proof that Petitioner's conviction was based on insufficient evidence. First, Petitioner and Raashid Johnson stood trial for different crimes. The issue regarding Raashid Johnson was whether he threatened Golston with a handgun after the shooting. The issue regarding the Petitioner was, principally, whether he shot Golston. Second, the Supreme Court has stated that "inconsistent verdicts are constitutionally tolerable," Dowling v. United States, 493 U.S. 342, 353-54 (1990), and "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." Harris v. Rivera, 454 U.S. 339, 345 (1981). Therefore, there is no merit in this argument either.

Viewing the facts in the light most favorable to the prosecution, the trial testimony allowed a rational fact-finder to conclude beyond a reasonable doubt that Petitioner shot Golston with the intent to kill him. Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

## B. Ineffective Assistance of Counsel

Next, Petitioner argues that he was denied his Sixth and Fourteenth Amendment rights because he was deprived of the effective assistance of counsel. Specifically, Petitioner argues that his trial attorney was ineffective for: (1) failing to conduct an adequate pre-trial investigation of David Johnson by failing to locate and interview him; (2) misrepresenting the defense theory of the case; and (3) failing to object to the introduction of character evidence.

Petitioner raised these issues on direct review. The Michigan Court of Appeals granted Petitioner's motion to remand for an evidentiary hearing to determine whether trial counsel conducted an adequate investigation of David Johnson as well as another issue which Petitioner has not challenged in his habeas petition. Petitioner's two additional allegations, whether trial counsel was ineffective for misrepresenting the defense theory of the case and failing to object to the Rule 404(b) character evidence, were not raised in the trial court's evidentiary hearing. The Michigan Court of Appeals's review was limited to errors apparent from the record on those two allegations. The Michigan Court of Appeals affirmed the trial court's determination, and found that Petitioner's additional arguments were without merit:

> Defendant also argues that defense counsel was ineffective for failing to fully investigate the case and timely interview David Johnson. To the extent defense counsel erred by failing to interview David Johnson sooner, defendant was not prejudiced because counsel was able to interview Johnson before he testified and the defense that David Johnson was the shooter was presented at trial. Contrary to what the defendant argues, the defense did not initially proceed with some other alternative theory at trial. Defense counsel reserved his opening statement. Later, when defense counsel gave his opening statement, he advanced the theory that an unidentified third person shot Golston. That theory was not inconsistent with

> David Johnson's subsequent testimony that he shot Golston. Thus, defendant was not prejudiced by any delay by defense counsel in ascertaining David Johnson's whereabouts and then interviewing him for trial.
>
> Defendant also argues that defense counsel was ineffective for allowing David Johnson to testify that he had met defendant after defendant was released from prison. However, defendant had previously stipulated that he had a prior felony conviction for purposes of the [felon-in-possession] charge. Because the jury was already aware that defendant was a convicted felon, defendant was not prejudiced by defense counsel's failure to object to David Johnson's brief reference to defendant's imprisonment.

Johnson, 2009 Mich. App. LEXIS 78, *5-6.

The two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Wiggins, 539 U.S. at 521.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466

U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable."  Id. at 687.

"Surmounting *Strickland's* high bar is never an easy task."  Padilla v. Kentucky, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.  Strickland, 466 U.S. at 689-90.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.  Strickland, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 131 S. Ct. at 788.

### 1. Failure to Investigate and Misrepresenting Defense Theory

Petitioner argues that his trial counsel was ineffective because he failed to locate and interview David Johnson before trial. Petitioner argues that because his trial counsel did not interview David Johnson before trial, his trial counsel advanced two separate defense theories due to trial counsel's late interview.

Strickland requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up . . ." Rompilla v. Beard, 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Attorneys do, however, have a duty to make all reasonable efforts to learn what they can about a case. See Id. at 385. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. Towns, 395 F.3d at 258. "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his [or her] options and make a reasonable choice between them.'" Id. quoting Horton v. Zant, 941 F.2d 1449, 1462 (11 Cir. 1991). Stated differently, "[i]t is not reasonable to refuse to investigate when their investigator does not know the relevant facts the investigation will uncover." Dickerson v. Bagley, 453 F.3d 690, 696 (6th Cir. 2006). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. Wiggins, 539 U.S. at 526; Sims v. Livesay, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

To demonstrate deficient performance or prejudice resulting from a failure to investigate, a petitioner must "make some showing of what evidence counsel should have pursued and how such evidence would have been material." Hutchinson v. Bell, 303 F.3d

14

720, 748 (6th Cir. 2002). "[T]here is no need to show that the evidence that might have been discovered would have been helpful-only that a proper judgment could not be made without the investigation when failure to investigate is thought to be sufficiently serious." Poindexter v. Mitchell, 454 F.3d 564, 588 (6th Cir. 2006). (Boggs, C.J., concurring).

In this case, Petitioner has not shown any deficient performance by his trial counsel. Petitioner points to his trial counsel's inability to locate witness David Johnson until the trial as evidence of a failure to investigate. However, Petitioner's trial counsel did not fail to investigate into David Johnson's whereabouts, nor did trial counsel fail to interview David Johnson.

Petitioner's trial counsel testified at the Ginther evidentiary hearing that he interviewed David Johnson before he testified at trial but counsel was unsure where the interview occurred. Counsel further testified that he could not locate David Johnson prior to trial because he could not determine his legal name, and had not been told it by Petitioner. He knew David Johnson only as "Little D" until the first day of trial, and his investigation up to that point was unsuccessful. Finally, on the first day of trial he was able to locate him incarcerated in the county jail. Further, counsel was ultimately able to produce David Johnson at trial, and he testified at length about he was the man who shot Golston–not Petitioner. Petitioner has failed to show that his trial counsel performed deficiently in preparing for and presenting this defense.

Likewise, Petitioner's argument that his trial counsel misrepresented the defense theory due to a failure to investigate and interview David Johnson is unpersuasive. Petitioner argues that his trial counsel advanced the theory that co-defendant Raashid

15

Johnson was the shooter during cross-examination of Golston. Later, after interviewing David Johnson, trial counsel advanced the theory that David Johnson was the shooter. However, this is incorrect. As the Michigan Court of Appeals reasoned, Petitioner's trial counsel advanced the theory during opening statement, which was reserved, that an unidentified third person shot Golston. This was done, apparently, at a point when defense counsel was still unsure whether he would be able to produce David Johnson. Later, David Johnson testified that he was responsible for the shooting. Clearly, Petitioner's trial counsel did not misrepresent the defense theory. These claims are without merit.

### 2. Failure to Object

Petitioner next argues that his attorney was ineffective for failing to object to David Johnson's testimony during cross-examination that he met Petitioner after Petitioner was released from prison. As with the previous ineffective assistance of counsel claims, this argument is also unpersuasive.

As the Michigan Court of Appeals noted, Petitioner had stipulated that he had been convicted of a felony before. The jury was clearly aware that Petitioner had a prior felony conviction. There is no reasonable probability that the result of Petitioner's trial would have been any different had the jury not learned that Petitioner and David Johnson met when Petitioner was released from prison. Additionally, during David Johnson's testimony, Petitioner's trial counsel repeatedly objected to the prosecutor's questions. At one point, each parties' counsel had a sidebar discussion with the trial judge based on the prosecutor's questions regarding the circumstances of how David Johnson met Petitioner. Petitioner's trial counsel did not perform deficiently in this regard. Habeas relief is denied

on this claim as well.

## C. Prosecutorial Misconduct

Finally, Petitioner argues that he was denied of a fair trial due to prosecutorial misconduct.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (quoting Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine "whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

Girts v. Yanai, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

During closing argument, the prosecutor referred to Petitioner as "evil." The Michigan Court of Appeals held that Petitioner was not deprived of a fair trial. Johnson, at *6. The Michigan Court of Appeals reasoned that any prejudice was cured when the trial

17

court instructed the jury that the attorneys' statements are not in evidence following Petitioner's defense counsel's objection. Id.

The Michigan Court of Appeals's analysis is reasonable. First, the prosecutor's remark was extremely isolated: Petitioner points to one comment in the entire closing argument. Second, as the Michigan Court of Appeals had reasoned, any prejudice was cured when the trial court gave a curative instruction that the attorneys' statements were not in evidence, which the jury is presumed to follow. U.S. v. Harvey, 653 F.3d 388, 395 (6th Cir. 2011). Third, the evidence against Petitioner was strong. Golston testified that he and Petitioner were alone in the room before the shooting and he saw Petitioner shoot him. The prosecutor's statement was not flagrant, and Petitioner was not deprived of a fair trial. See Hutchison, 303 F.3d at 750-51 (denying habeas relief where prosecutor described defendant as "evil"). Therefore, Petitioner is not entitled to federal habeas relief on this claim.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the conclusions that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability on all claims.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** for Petitioner's claims.

s/Marianne O. Battani  
MARIANNE O. BATTANI  
UNITED STATES DISTRICT JUDGE

DATE: April 12, 2012

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, Abdullah Johnson via ordinary U.S. Mail, and Counsel for the Respondent, via the Court's ECF Filing System.

s/Bernadette M. Thebolt  
Case Manager